## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| HEATHER P. HOGROBROOKS HARRIS, | ) |
| | ) |
| Plaintiff, | ) Civil No. |
| | ) 2:15-cv-02501-JPM-dkv |
| vs. | ) |
| | ) |
| ALLY FINANCIAL, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Ally Financial, Inc.'s ("Defendant") Motion to Dismiss, filed August 4, 2015. (ECF No. 5.) Plaintiff Heather P. Hogrobrooks Harris ("Plaintiff") timely responded in opposition on August 20, 2015. (ECF No. 10.) Defendant filed a Reply on August 28, 2015. (ECF No. 11.) The Court held a telephonic hearing on the Motion to Dismiss on September 1, 2015. (Min. Entry, ECF No. 14.) Plaintiff filed a Supplemental Response to the Motion to Dismiss on September 3, 2015. (ECF No. 17.) On October 23, 2015, Plaintiff filed an Amended Complaint. (ECF No. 19.) Defendant filed a Motion to Strike Amended Complaint on November 4, 2015. (ECF No. 22.) The Court granted Defendant's Motion to Strike on November 25, 2015. (ECF No. 24.)

For the reasons stated below, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Factual Background

Plaintiff Heather P. Hogrobrooks Harris is a citizen of Tennessee. (Compl. ¶ 1, ECF No. 1-1 at PageID 11.) Defendant is a citizen of Michigan. (Id. ¶ 2.) Plaintiff and a co-buyer entered into a lease with Defendant on October 13, 2012, for a 2012 GMC Acadia sport utility vehicle.[1] (Id. ¶ 3; ECF No. 5-2.) Plaintiff asserts that she and the co-buyer attempted to extend the lease by paying a $200.00 fee, but the lease was not extended, and Defendant reported Plaintiff and the co-buyer as late on their payment. (Compl. ¶ 5.)

Plaintiff asserts that on November 21, 2014, she mailed a $22,454.10 cashier's check to Defendant, which was deposited on December 1, 2014. (Id. ¶ 9-10.) The amount was not sufficient for purchase of the vehicle. (See ECF No. 1-1 at PageID 23.) On December 11, 2014, Defendant notified Plaintiff by letter that the purchase price was $25,043.36 and that the shortage of $2,589.26 was due by December 20, 2014, to execute the sale of the vehicle. (Id.) Plaintiff alleges that Defendant has

---

[1] Plaintiff and the co-buyer are the lessees, and David Taylor Cadillac Buick GM is the lessor. (See ECF No. 5-2.) The lessor assigned the lease and sold the vehicle to Defendant. (See id.)

2

retained the $22,454.10 that was paid, but has not transferred title to the vehicle. (Compl. ¶ 19.)

Plaintiff also alleges that Defendant reported negative information about Plaintiff and/or the co-buyer to credit agencies, which resulted in the co-buyer's inability to secure a loan to support Plaintiff after the co-buyer's death.[2] (Id. ¶¶ 13-15.)

B. **Procedural Background**

Plaintiff initially brought suit in the Circuit Court of Tennessee for the Thirtieth Judicial District against Defendant on May 21, 2015. (Compl., ECF No. 1-1 at PageID 11.) Defendant removed the case to federal district court in the Western District of Tennessee on July 29, 2015. (Notice of Removal, ECF No. 1.)

On August 4, 2015, Defendant filed the instant motion to dismiss. (ECF No. 5.) Plaintiff responded in opposition on August 20, 2015. (ECF No. 10.) Defendant filed a Reply on August 28, 2015. (ECF No. 11.) The Court held a telephonic scheduling conference and hearing on the instant motion on September 1, 2015. (ECF No. 14.) Plaintiff filed a Supplemental Response to the instant motion on September 3, 2015. (ECF No. 17.) Plaintiff filed an Amended Complaint on

---

[2] In November 2014, the co-buyer had been informed that his cancer was untreatable. (Compl. ¶ 8.) The co-buyer died on March 10, 2015. (Id. ¶ 17.)

3

October 23, 2015.  (ECF No. 19.)  The Court granted Defendant's Motion to Strike the amended complaint (ECF No. 22) on November 25, 2015.  (ECF No. 24.)

## II. LEGAL STANDARD

A court may dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

> A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. . . . A claim is facially plausible when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . [T]he court need not accept as true allegations that are conclusory or require unwarranted inferences based on the alleged facts."

Newberry v. Silverman, 789 F.3d 636, 640 (6th Cir. 2015) (citations and internal quotation marks omitted).  A court must "construe[] the complaint in a light most favorable to the plaintiff . . . ."  HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 611 (6th Cir. 2012).

> When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are

4

referred to in the Complaint and are central to the claims contained therein.

Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008).

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Plaintiffs who "possess[] a greater propensity and aptitude to comprehend the legal proceedings and applicable laws than a non-attorney pro se litigant would," however, are not granted "the leniency afforded to pro se litigants." Johansen v. Presley, 977 F. Supp. 2d 871, 876 (W.D. Tenn. 2013).

### III. ANALYSIS

Before considering Plaintiff's claims, the Court must first decide whether to treat Plaintiff as an ordinary pro se plaintiff. Defendant asserts that Plaintiff was formerly a licensed attorney in Arkansas and should not be considered an ordinary non-attorney pro se plaintiff. (ECF No. 5-1 at 4 n.2.) Plaintiff does not dispute that she was formerly an attorney. As Defendant correctly notes, "because [the pro se plaintiff] has a law degree and has been licensed to practice law until recently, the Court cannot accord [her] the advantage of a

5

liberal construction of her claims." (Id. (quoting Spano v. Hoffman, No. 08-60238-CIV, 2008 WL 2245853, at *2 (S.D. Fla. May 29, 2008)) (internal quotation marks omitted)) Although Plaintiff is no longer practicing law, she still possesses a "greater propensity" to understand the legal proceedings than a pro se plaintiff with no legal experience. Accordingly, Plaintiff is not entitled to the leniency an ordinary non-attorney pro se plaintiff would receive with respect to construction of the pleadings.

Plaintiff brings claims against Defendant for breach of accord and satisfaction, tortious interference with a contract, conversion, violations of the federal Fair Credit Reporting Act ("FCRA") and the Tennessee Consumer Protection Act ("TCPA"), and attempted wrongful possession. (Compl. ¶¶ 19-24, ECF No. 1-1 at PageID 11.) The Court addresses each of these claims in turn.

### A. Breach of Accord and Satisfaction

Plaintiff asserts that Defendant breached an accord and satisfaction of the vehicle lease with Plaintiff and the co-buyer. (Compl. ¶ 19.) The parties' lease states that there is "an option to buy the vehicle at the end of the lease term for $22,454.10 plus official fees and taxes." (ECF No. 5-2 at 1.) Plaintiff states that she and the co-buyer made a good faith offer of $22,454.10 to Defendant, which Defendant has retained. (Id.) A note had been written on the cashier's check

6

which Plaintiff mailed to Defendant that the $22,454.10 amount was "Full Payment of All monies owed to Ally Financial by [Plaintiff and the co-buyer]." (See ECF No. 1-1 at PageID 20.) Defendant asserts that it never agreed to an accord and satisfaction. (ECF No. 5-1 at 6.)

The Court finds that the facts asserted by Plaintiff support a claim for breach of accord and satisfaction. Under Tennessee law, "[a]n accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim . . . something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such agreement." Scipio v. Sony Music Entm't, 173 F. App'x 385, 393 (6th Cir. 2006) (quoting Lytle v. Clopton, 261 S.W. 664 (Tenn. 1924)). Plaintiff asserts that Defendant accepted the check offered "and has retained it without sending title." (Compl. ¶ 19.)

The relevant statute specifies that money must be returned to the debtor if the creditor does not discharge the debt:

> All receipts, releases, and discharges in writing, whether of a debt of record or a contract under seal, or otherwise, shall have effect according to the intention of the parties thereto. However, the remittance and acceptance of a check or other instrument bearing on its face words that it is payment or satisfaction in full of a debt or obligation shall not be considered conclusive evidence of an intention that the debt or obligation for which the same is given be discharged or released; provided,

7

> that the remittee of such instrument tenders back to the remittor the funds represented by such instrument.

Tenn. Code Ann. § 24-7-106 (emphasis added). "The statute protects unwary creditors from the consequences of inadvertently cashing checks designated as payment in full of indebtedness exceeding the amount of the checks." Cookeville Prod. Credit Ass'n v. Goolsby, 840 F.2d 16 (6th Cir. 1988) (per curiam) (unpublished table decision).

In this case, Defendant is not an unwary creditor. The writing on the check signaled Plaintiff's intent for the amount of $22,454.10 to serve as payment in full for the vehicle. (See ECF No. 1-1 at PageID 20.) The letter to which the check was attached included a subject line stating that the check was "to represent full accord and satisfaction of all monies owed to Ally," and the body of the letter specified that "we are sending this check . . . as full payment of the vehicle . . ." (Id. at PageID 19.)

Although the letter to Plaintiff dated December 11, 2014, demonstrates that Defendant did not accept the amount as payment in full at the time (id. at PageID 22), the Complaint and attached documents do not indicate that Defendant has returned any funds it received back to Plaintiff. Unlike the creditor in Quality Care Nursing Services, Inc. v. Coleman, Defendant had no reason to believe that the check was a regular payment on

8

merchandise sold under a series of invoices. See 728 S.W.2d 1, 6 (Tenn. 1987) (finding that because the payment amount totaled the money owed on the latest two invoices, the "clerk receiving [the] check and comparing it with . . . the invoices would have no reason to question the accuracy of the ['In full to date'] notation on the check").

Rather, construing the Complaint in the light most favorable to Plaintiff suggests that Defendant had notice that Plaintiff intended for Defendant to accept the $22,454.10 check as payment in full. "Having accepted and deposited the check, [Defendant cannot] avoid a complete discharge of the debt without tendering back the [amount of the check]." Cookeville, 1988 WL 15507, at *3. Defendant has not transferred title of the vehicle to Plaintiff, nor has Defendant tendered back the $22,454.10 to Plaintiff. Therefore, the Court finds that Plaintiff has alleged sufficient facts for a claim for breach of accord and satisfaction. Defendant's motion to dismiss this claim is DENIED.

    **B.    Tortious Interference with Contract**

Plaintiff asserts that Defendant's "delinquent credit reporting and wrongful[] [retention of] vehicle title prevented Plaintiff from receiving the intended benefits" of the co-buyer's payment in full of the vehicle and the co-buyer's securing of a loan. (Compl. ¶ 20.) Defendant argues that the

facts alleged by Plaintiff cannot support a single element of this claim. (ECF No. 5-1 at 9.)

The Court finds that Plaintiff has failed to state a claim for tortious interference with contract. The elements of a statutory or common law action for tortious interference with contract are identical under Tennessee law. Williams-Sonoma Direct, Inc. v. Arhaus, LLC, 304 F.R.D. 520, 529 (6th Cir. 2015).

> In order to establish such a cause of action, a plaintiff must prove that there was a legal contract, of which the wrongdoer was aware, that the wrongdoer maliciously intended to induce a breach, and that as a proximate result of the wrongdoer's actions, a breach occurred that resulted in damages to the plaintiff.

Id. (quoting Quality Auto Parts Co. v. Bluff City Buick Co., 876 S.W.2d 818, 822 (Tenn. 1994)). Since "the purpose of the tort of intentional interference . . . is to deter third parties from interfering with the contractual relations of parties to a contract," a party to a contract cannot be liable for the tort against its own contract. Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d 785, 790 (Tenn. 2006).

In this case, the parties to the lease were Plaintiff, along with the co-buyer, and Defendant. (See ECF No. 5-2.) Plaintiff also asserts that Defendant tortiously interfered with the co-buyer's securing of a mortgage. (Compl. ¶ 20.) Plaintiff asserts that the co-buyer was not able to secure the

mortgage because of "negative credit reporting by the Defendant." (Id. ¶ 15.) Since the mortgage was denied, Plaintiff has failed to plead the existence of an actual contract between the co-buyer and a lender of which Plaintiff would have been a beneficiary. As Defendant cannot be liable for tortious interference of its own contract, and there exists no contract for a mortgage to the co-buyer, Defendant's motion to dismiss Plaintiff's claim for tortious interference of contract is GRANTED. The claim is DISMISSED with prejudice.

Plaintiff does not assert a claim for interference of a prospective business relationship, but nevertheless, such a claim is not supported by the facts. Liability under such a claim would first require a relationship between Plaintiff or the co-buyer and "an identifiable class of third persons" that the Defendant knew about. Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002). Further, Defendant must have intended to cause the relationship to be breached or terminated. Id. The Complaint does not allege that Defendant knew of the Plaintiff or co-buyer's other business relationships or that Defendant intended to interfere with them.

### C. Conversion

Plaintiff asserts that Defendant has maintained "dominion and control" over the title to the vehicle, which has caused Plaintiff "financial detriment and hardship." (Compl. ¶ 21.)

Defendant argues that the tort of conversion does not apply to title. (ECF No. 5-1 at 10.)

The Court finds that Plaintiff has failed to state a claim for conversion. "The elements of a conversion claim include: (1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion over the chattel alleged to have been converted; and (3) defiance of the true owner's rights to the chattel." White v. Empire Express, Inc., 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012).

In this case, the alleged appropriation is of the title to the vehicle, which does not constitute tangible property. Section 67-5-501 of the Tennessee Code defines "'[t]angible personal property' [as] personal property such as goods, chattels, and other articles of value that are capable of manual or physical possession, and certain machinery and equipment, separate and apart from any real property, and the value of which is intrinsic to the article itself." Tenn. Code Ann. § 67-5-501(12). Even though a document of title is capable of physical possession, the title itself has no intrinsic value; rather, it is better described as intangible personal property.

"'Intangible personal property' includes personal property, such as money, any evidence of debt owed . . . and all other forms of property, the value of which is expressed in terms of what the property represents rather than its own intrinsic

12

worth." Tenn. Code Ann. § 67-5-501(5) (emphasis added). "[I]n Tennessee, a civil action for conversion . . . is not recognized for the appropriation of intangible personal property." Ralph v. Pipkin, 183 S.W.3d 362, 368 (Tenn. Ct. App. 2005). Thus, Plaintiff's claim that Defendant converted "Plaintiff's title to the financial detriment and hardship of Plaintiff" fails. (Compl. ¶ 21.) Defendant's motion to dismiss Plaintiff's conversion claim is GRANTED, and the claim is DISMISSED with prejudice.

**D. Fair Credit Reporting Act**

Plaintiff asserts that "Defendant has wrongfully and continually since receiving the vehicle's payoff reported Plaintiff as delinquent to the credit bureaus." (Compl. ¶ 22.) Defendant argues that it does not owe a duty to Plaintiff under the Fair Credit Reporting Act ("FCRA") as a furnisher of information to credit reporting agencies and that Plaintiff has no private right of action under the FCRA. (ECF No. 5-1 at 11-12.)

The Court finds that Plaintiff has failed to state a claim under the FCRA. Section 1681s-2 of the FCRA describes the duty of furnishers of credit information to ensure accurate information is reported to consumer reporting agencies. 15 U.S.C. § 1681s-2. "A person shall not furnish any information relating to a consumer to any consumer reporting agency if the

13

person knows or has reasonable cause to believe that the information is inaccurate." Id. § 1681s-2(a)(1)(A). If a furnisher of information has notice from the consumer that the consumer's credit information is inaccurate, the furnisher is prohibited from providing the challenged information to a credit reporting agency. Id. § 1681s-2(a)(1)(B). Although there is a private right of action under certain sections of the FCRA, a consumer is "expressly preclude[d] . . . from enforcing the requirement that furnishers, under § 1681s-2(a), initially provide complete and accurate information to a [consumer reporting agency]." Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 615 (6th Cir. 2012) (citing 15 U.S.C. § 1681s-2(c)). Thus, regardless of whether Plaintiff's credit information was inaccurate and whether Defendant had notice or knowledge of possible inaccuracy, Plaintiff, as a consumer, is unable to assert a claim under § 1681-s(2)(a) of the FCRA.

Additionally, while the FCRA does create a private right of action under 15 U.S.C. § 1681s-2(b), Boggio, 696 F.3d at 616, the private right of action applies only when a consumer reporting agency, rather than the consumer herself, is the party who has provided notice to the furnisher of information of potential incompleteness or inaccuracy of the information provided to it by the furnisher. 15 U.S.C. § 1681s-2(b)(1); see id. § 1681i(a)(2). Defendant has no duty to Plaintiff to

conduct an investigation or to take any of the other affirmative steps in § 1681s-2(b)(1) to correct incomplete or inaccurate information because such duty is owed only to the consumer reporting agency. See Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d 496, 502 (W.D. Tenn. 1999). Plaintiff cannot support a claim under the FCRA based on a private right of action under § 1681s-2(b) because there is no allegation that a consumer reporting agency provided notice of inaccurate information to Defendant. Since Plaintiff has no private right of action under § 1681s-2(a) and has failed to state a claim under § 1681s-2(b), Defendant's motion to dismiss as to Plaintiff's FCRA claim is GRANTED, and the claim is DISMISSED with prejudice.

**E.    Tennessee Consumer Protection Act**

Plaintiff asserts that Defendant's conduct following the payment on the vehicle violates the Tennessee Consumer Protection Act ("TCPA"). (Compl. ¶ 23.) Plaintiff asserts, among other allegations, that Defendant has threatened and made "negative and unfair reports" and "depriv[ed] her of physical possession of the vehicle." (Id.) Defendant argues that Plaintiff's credit reporting claims are preempted by the FCRA and the others are insufficient for relief under the TCPA. (ECF No. 5-1 at 13.)

The Court finds that the FCRA does preclude Plaintiff from bringing credit reporting claims under the TCPA. Section 1681t(b) of the FCRA states: "No requirement or prohibition may be imposed under the laws of any State with respect to subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F). Thus, Plaintiff's credit reporting claims in this case are preempted by the FCRA. See Carney, 57 F. Supp. 2d at 503 ("To the extent the TCPA provides a private cause of action against furnishers of information [after receiving notice from a consumer], it relates to the subject matter of § 1681s-2(a) & (c) and conflicts with those provisions. Because the duties . . . of furnishers of information upon . . . notice from a consumer are regulated under § 1681s-2(a) & (c) of the FCRA, there is a preemption of plaintiff's state law claim under the TCPA.").

The Court finds, however, that one of Plaintiff's other claims under the TCPA is sufficiently supported by her factual allegations. Plaintiff asserts that Defendant violated the TCPA by "accept[ing] and retain[ing] monies in payment of the vehicle and then . . . retain[ing] legal title to her property." (Compl. ¶ 23.) Defendant argues that its refusal to transfer title to Plaintiff is not unfair or deceptive under the TCPA

16

because Plaintiff has not paid in full for the vehicle.  (ECF No. 5-1 at 14.)

The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce . . . ." Tenn. Code Ann. § 47-18-104(a).  The Court finds that Plaintiff alleges sufficient facts regarding her payment in full and Defendant's breach of accord and satisfaction.  See supra Part III.A.  Thus, if Plaintiff owed no outstanding debt to Defendant, then Defendant's failure to transfer title would constitute an act or practice actionable under the TCPA.  See Nzirubusa v. United Imports, Inc., No. M2004-01884-COA-R3-CV, 2006 WL 1716790, at *4 (Tenn. Ct. App. June 21, 2006) ("[T]he furnishing of a clean title is a distribution of property that arises from a commercial transaction and, consequently, unfair or deceptive acts or practices in regard to such a distribution can lead to civil liability under the [TCPA].")  Since Plaintiff has stated a claim for breach of accord and satisfaction in this case, she also has stated a claim for unfair and deceptive acts under the TCPA based on Defendant's withholding of title. Defendant's motion to dismiss as to Plaintiff's TCPA claims is GRANTED as to the credit reporting claim and DENIED as to the retention of title claim.

**F.  Attempted Wrongful Repossession**

Plaintiff asserts that "Defendant is attempting to deprive Plaintiff of not only the thousands of dollars paid for the vehicle [and] title of the vehicle[,] but the vehicle itself." (Compl. ¶ 24.) Defendant argues that Plaintiff's allegation alone without facts supporting the alleged wrongful acts is insufficient to state a claim. (ECF No. 5-1 at 14-15.)

The Court finds that Plaintiff has not alleged sufficient facts to state a claim for Defendant's wrongful acts associated with its attempted repossession of the vehicle. "The remedy for wrongful acts committed in an unsuccessful attempt to repossess a chattel is a suit for the wrongful acts and not for a repossession which did not occur." Baker v. Moreland, No. 89-62-II, 1989 WL 89758, at *7 (Tenn. Ct. App. Aug. 9, 1989). Since the vehicle remains in Plaintiff's physical possession, Plaintiff cannot bring a claim for attempted wrongful repossession, but rather only wrongful acts the Defendant engaged in related to the attempted repossession.

Since the Court finds that Plaintiff has a claim for breach of accord and satisfaction, see supra Part III.A, Plaintiff may have a claim for any alleged wrongful act of Defendant to repossess the vehicle, because Defendant would not have been entitled to do so if payment had been made in full as Plaintiff asserts. Plaintiff, however, does not allege facts sufficient to state a claim that Defendant engaged in any wrongful act in

attempting to repossess the vehicle.  While Plaintiff asserts that Defendant "threaten[ed]" and "stalk[ed] her for the specific intent to due [sic] further harm to her by depriving her of . . . the vehicle," she does not provide any other facts to support these conclusory allegations.  (Compl. ¶ 23.)  Thus, Plaintiff's attempted wrongful repossession claim fails because there was no actual repossession, and she has not sufficiently stated a claim for wrongful acts associated with attempted repossession.  Defendant's motion to dismiss as to Plaintiff's attempted wrongful possession claim is GRANTED, and the claim is DISMISSED with prejudice.

IV. **CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 5) is GRANTED in part and DENIED in part.  Plaintiff has sufficiently alleged a claim of breach of accord and satisfaction and a claim under the TCPA for Defendant's retention of title to the vehicle.  Accordingly, Defendant's Motion to Dismiss is DENIED as to only those two claims.  All other claims by Plaintiff against Defendant are DISMISSED with prejudice.

**IT IS SO ORDERED,** this 25th day of November, 2015.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE